## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2018, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyree Gilbert,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 5, 2018

Court of Appeals Case No.
18A-CR-695

Appeal from the Marion Superior Court

The Honorable Steven J. Rubick, Magistrate

Trial Court Cause No.
49G01-1711-F4-42566

**Baker, Judge.**

[1]     Tyree Gilbert appeals his conviction for Level 4 Felony Unlawful Possession of a Firearm by a Serious Violent Felon,[1] arguing that there is insufficient evidence to support the conviction. Finding the evidence sufficient, we affirm.

# Facts

[2]     On October 31, 2017, Officer Kenneth Kunz of the Indianapolis Metropolitan Police Department (IMPD) was monitoring the intersection of 25th Street and Keystone Avenue in Indianapolis. Kunz and other IMPD officers classified this location as a "high crime" area due to its high rate of drug and gun violence. As such, the IMPD heavily patrolled this intersection. Officer Kunz noticed a white Ford Explorer turning onto Keystone Avenue without signaling, which is a standard traffic infraction. Gilbert was driving the Ford Explorer. Officer Kunz began to follow the vehicle, and he called other IMPD officers for assistance with the pursuit.

[3]     Officer Peter Koe, Officer Brandon Brown, and Sergeant Phillip Bulfer responded to Officer Kunz's call for back-up. A few minutes later, Sergeant Bulfer found Gilbert stopped at a red light and turned on his police lights to pull Gilbert over. Noticing the police lights, Gilbert drove away at a high speed. All four officers pursued Gilbert via different routes; they planned to create a perimeter around Gilbert to prevent him from escaping.

---

[1] Ind. Code § 35-47-4-5(c).

[4] Gilbert's vehicle eventually hit a concrete rainspout. He immediately exited the car and fled on foot through a residential backyard. At a certain point, Gilbert reached a tall corrugated metal fence. Officer Koe, pursuing Gilbert from behind, watched as he climbed over the fence. Officer Brown also watched as Gilbert eventually scaled and dropped down on the other side of the fence and continued to flee on foot. Officer Brown and Officer Matthew Early eventually caught up with Gilbert and arrested him. Neither Officer Brown nor Officer Koe saw any other person throughout the entire pursuit. Officer Early searched Gilbert incident to his arrest and found 3.23 grams of marijuana on his person.

[5] Roughly ten minutes after arresting Gilbert, Officer Brown and other IMPD officers retraced Gilbert's foot path to look for evidence. Officer Brown found a handgun located very close to where Gilbert had landed after climbing the metal fence. According to IMPD, the gun was "dry," and it felt "room temperature" to the touch. Tr. p. 107. The ground around the gun was littered with debris and was wet while the outside temperature was approximately forty degrees Fahrenheit. *Id.*

[6] On November 2, 2017, the State charged Gilbert with Count I, Level 4 felony unlawful possession of a firearm by a serious violent felon; Count II, Level 5 felony carrying a handgun with a prior felony conviction; Count III, Level 6 felony resisting law enforcement; Count IV, Class A misdemeanor resisting law enforcement; and Count V, Class B misdemeanor possession of marijuana. Gilbert waived his right to a jury trial, and his case proceeded to a bench trial on February 14, 2018.

[7] On March 2, 2018, the trial court found Gilbert guilty as charged. However, at sentencing, the judge merged Count II into Count I and merged Count IV into Count III. The trial court sentenced him to an aggregate term of eight years in the Department of Correction. Gilbert now appeals.

# Discussion and Decision

[8] Gilbert's sole argument on appeal is that the State failed to present sufficient evidence to show that he either had actual or constructive possession of the firearm discovered close to the metal fence. In other words, he challenges the sufficiency of the evidence supporting his conviction for unlawful possession of a firearm by a serious violent felon.

[9] When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not our job to reweigh the evidence or to judge the credibility of the witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

[10] To convict Gilbert of Level 4 felony unlawful possession of a firearm by a serious violent felon, the State was required to prove beyond a reasonable doubt that Gilbert, a serious violent felon, (1) knowingly or intentionally (2) possessed a firearm. I.C. § 35-47-4-5(c).

[11] Possession of a firearm may be either actual or constructive. *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004). An individual has actual possession over a firearm if he or she "has direct physical control" of the weapon. *Grim v. State*, 797 N.E.2d 825, 831 (Ind. Ct. App. 2003). An individual has constructive possession of a firearm when he has the intent and capability to maintain dominion and control over the contraband. *Id.*

[12] Moreover, "when constructive possession is asserted, the State must demonstrate the defendant's knowledge of the contraband." *Woods v. State*, 471 N.E.2d 691, 694 (Ind. 1984). Knowledge may be inferred from either exclusive dominion and control over the premises containing the firearm, or from evidence of additional circumstances indicating the defendant's knowledge of the presence of the firearm. *Id.* Proof of this can be shown through (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the defendant; (4) location of the firearm within the defendant's plain view; and (5) the "mingling" of a firearm with other items owned by the defendant. *Grim*, 797 N.E.2d at 831.

[13] It is clear that Gilbert did not have actual possession of the firearm at the time of his arrest. Officer Early conducted a full search of Gilbert incident to his arrest and did not discover a firearm in his possession. Therefore, Gilbert did not have direct, physical control over the firearm. Nevertheless, a reasonable trier of fact could conclude that Gilbert had constructive possession of the firearm at the time he was fleeing the police.

[14] The record reveals that Officer Brown discovered a firearm right where he saw Gilbert drop down from the fence. While this firearm may not have been "proximate" to the defendant or his other personal possessions, it was located precisely at the place where Officer Brown identified Gilbert during his pursuit. Also, Officer Brown noticed that the firearm was "dry" and felt like it was at "room temperature" when he discovered it. Tr. p. 107. A metal firearm would be noticeably colder, wetter, and messier to the touch if it had been laying on the ground for such a long time on a cold, wet night. Therefore, a reasonable trier of fact could infer that such a firearm had not been in that location for very long. Additionally, Gilbert was attempting to escape the police. In other words, he was "in flight," and the evidence demonstrates that the firearm could very well have been within his dominion until he tossed it away.

[15] Moreover, multiple officers witnessed Gilbert's flight and did not see any other person during this time. According to the officers' eyewitness testimony, the gun was found almost exactly where Gilbert had fallen after he climbed the metal fence. In looking at the totality of the evidence, a reasonable trier of fact could conclude that Gilbert had possessed the firearm until he voluntarily tossed the firearm in flight to avoid having it on his person. Gilbert argues to the contrary, amounting to a request to reweigh the evidence, which we may not do.

[16] We hold a reasonable trier of fact could have found Gilbert had constructive possession of the firearm. In other words, the evidence is sufficient to support his conviction.

[17]   The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.